IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DOUBLE EAGLE ENERGY, INC., a Texas corporation registered to do business in Illinois,<br><br>Plaintiff,<br><br>v.<br><br>DALE R. LOOS and LYNN S. LOOS,<br><br>Defendants. | CASE NO: _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

NOW COMES Plaintiff, Double Eagle Energy, Inc., a Texas corporation authorized to do business in Illinois, by and through its attorneys, Brown, Hay & Stephens, LLP, Scott C. Helmholz and Eliott M. Hedin, and for their Complaint against Defendants Dale R. Loos and Lynn S. Loos, state as follows:

### Allegations Common to All Counts

### Parties

1. Double Eagle Energy, Inc., ("DEEI" or "Plaintiff") is a Texas corporation with its principle place of business in Texas. DEEI is not a citizen of the State of Illinois.

2. Defendants Dale R. Loos and Lynn S. Loos reside in the City of Baylis, County of Pike, Illinois and are and were at all relevant times citizens of the State of Illinois.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different States.

4. Venue for this action properly lies in the Central District of Illinois, Springfield Division pursuant to 28 U.S.C. §1391(a) because all of the defendants reside in Pike County

and a substantial part of the events or omissions giving rise to this Complaint occurred in this judicial district.

## The Project

5. DEEI, together with and by and through its authorized agent, Allied Energy, LLC ("Allied"), acquired a series of oil and gas leases and/or right-of-way grants or easements necessary to drill and complete producing gas wells and to lay and interconnect pipelines between and among the producing wells to facilitate the delivery and sale of the produced gas in Adams County, Illinois ("the Project").

6. Between June 2, 2003 and February 13, 2004, Plaintiffs obtained the following leases and/or right-of-way grants on behalf of the Project:

  (a) Dale R. and Lynn S. Loos Oil and Gas Lease, dated September 15, 2003 (the "Loos Lease");

  (b) Helen Hill Oil and Gas Lease, dated October 14, 2003 (the "Hill Lease");

  (c) James A. Carlock Natural Gas Lease dated February 3, 2004 (the "Carlock Lease")

  (d) Leo J. and Irene Mast Oil and Gas Lease, dated July 25, 2003;

  (e) Donald O. and Donald W. Owens Oil and Gas Lease, dated June 2, 2003;

  (f) Thomas S. and Theresa Badgley Heitholt Pipeline Right-of-Way Grant, dated February 13, 2004;

  (g) John C. Barker Pipeline Right-of-Way Grant, dated February 13, 2004;

  (h) John W., Irene and Dennis Main Pipeline Right-of-Way Grant, dated February 13, 2004; and,

  (i) Roger E. and Mary R. Phillips Pipeline Right-of-Way Grant, dated February 13, 2004.

7. The Loos Lease, in addition to granting DEEI the rights to explore for, drill, develop and produce oil and gas, grants lessee the right to lay pipelines and establish rights-of-way for pipelines under and across the Loos Premises to produce and market gas from other

nearby leaseholds, such as the Hill Lease. A true and accurate copy of the Loos Lease is attached hereto as Exhibit 1.

8. On September 15, 2003, DEEI assigned and transferred to Allied the right to operate and produce all existing and future wells on the leases, drill additional wells on the leases.

9. Between August 20, 2003, and September, 2004, Allied drilled and completed a number of producing gas wells, including a gas well on the Loos Lease known as the Loos #1 and a gas well on the Hill Lease known as the Hill #1.

10. The Loos Lease had a primary term of one year from September 15, 2003, the date of the lease. The drilling of the Loos #1 commenced on October 6, 2003 and was completed on October 8, 2003, which was within the primary term.

11. During and/or after drilling and completing the producing gas wells, Allied supervised or otherwise arranged for the construction and installation of buried pipelines between and among the producing wells so as to deliver produced gas to the nearby gas gathering system of Scope Operating Co. ("Scope").

12. Allied constructed the Project's transmission pipeline to connect the leases to Scope's gathering system because Scope owns and operates compression and dehydration equipment necessary to convert Plaintiff's produced gas to the "pipeline quality" standard required to market the gas produced from the wells in interstate commerce, because Scope possesses access to an interstate gas pipeline "tap" necessary for the sale of the gas produced from the wells, and Scope has a contract with a company to sell gas on behalf of itself and the Plaintiff. Allied entered into an agreement with Scope concerning the terms and conditions by which Scope would transport, deliver and sell gas produced from the leases to the company and remit the sale proceeds to Allied for the benefit of the Plaintiff and Defendants as royalty owners.

13.     As of November, 2004, Allied had drilled and completed seven producing gas wells and connected at least three of these wells, including the Loos #1, to the Project's interconnecting transmission pipeline system for delivery of gas into Scope's gathering system.

14.     On or about November 18, 2004, James A. Carlock ("Carlock") with the knowledge and acquiescence of Defendants, turned off a master valve on a segment of the Project's interconnecting pipeline system located on Carlock's property.  Carlock and Defendants' actions shut in and prevented any further production from the Project's producing wells, including the Loos #1.  Gas was produced from the Loos #1 and several other gas wells before the system was shut down.

15.     When DEEI and/or its agent attempted to enter upon Carlock's property to restore the flow of gas, Carlock ordered them to leave and thereafter threatened to call law enforcement authorities if DEEI and/or its agent attempted to re-enter Carlock's property to restore the gas flow.

16.     On or about January 11, 2006, a lawsuit was initiated against Carlock in the United States District Court for the Central District of Illinois, Springfield Division.  <u>Robert S. Gilmore, Steve Gerard, Devon Wilson and George Copple v. James A. Carlock</u>, Case No. 06-3010.  On June 15, 2006, pursuant to a Joint Stipulation of Dismissal, the case was dismissed.

17.     Having resolved the dispute with Carlock, DEEI and/or its agent began the process of re-connecting the gas wells, including the Loos #1, to the pipeline system with the goal of producing and marketing gas under the oil and gas leases.  DEEI and/or its agent have successfully reconnected several wells to the pipeline system.

18.     On or about August 1, 2006, Plaintiff learned that Mr. and Mrs. Loos claimed the Loos Lease lacked validity.  Plaintiff thereafter informed Mr. and Mrs. Loos of the continuing validity of the lease and notified them of the consequences if they unlawfully interfered with the Plaintiff's rights under the Loos Lease.

19.     On August 4, 2006, Robert K. Adrian, attorney for Mr. and Mrs. Loos, stated in a

letter that the Loos Lease expired because no oil or gas was being produced from the Loos property. Defendants or individuals acting on their behalf placed a lock on the Loos #1 well and have denied DEEI and/or its agent access to the gas well and premises for the purpose of reconnecting the gas well to the pipeline system, operating the gas well, producing gas and marketing the gas under the terms of the Loos Lease.

20. The Defendants own the surface and an undivided one-half interest in the oil and gas under the premises described in the Loos Lease (hereinafter, the "Loos Premises").

21. Raymond William Myers is the sole owner of the other undivided one-half of oil and gas under the Loos Premises.

22. Raymond William Myers acquired his undivided one-half interest pursuant to a reservation in a Warranty Deed dated July 2, 1958, from Nona M. Myers, a widow now deceased, Raymond William Myers and Polly Ann Myers, his previous wife, to William V. Barrick and Hazel C. Barrick, husband and wife. Pursuant to a reservation in the Warranty Deed, Nona Myers and Raymond William Myers "reserve[ed] unto themselves, their heirs, executors, administrators and assigns one-half (1/2) of all oil, gas, and minerals in and under the surface of said land, together with the full and free right to enter upon said premises and use so much of the surface thereof as might be reasonably necessary in operating and drilling and marketing the production thereof insofar as their one-half (½) interest is concerned".

23. On September 13, 2006, Raymond William Myers and Shirley Lou Myers, his wife, as lessors, executed an Oil and Gas Lease for the Loos Premises on behalf of DEEI, as lessee (the "Myers Lease"). A true and accurate copy of the Myers Lease is attached hereto as Exhibit 2.

24. Defendants have also denied DEEI and/or its agent ingress to and egress across the Loos Premises for the purpose of producing, transporting and marketing gas pursuant to the rights obtained from Myers under the Myers Lease.

25. Defendants have prevented DEEI and/or its agent from laying a pipeline from the Hill #1 well under the Loos Premises, thereby preventing DEEI and/or its agent from connecting the Hill #1 to the pipeline system.

26. DEEI and/or its agent are ready and willing to connect the Loos #1 to the pipeline system and commence the production and marketing of gas from the Loos #1.

27. DEEI and/or its agent are ready and willing to install the necessary pipeline to connect the Hill #1 to the pipeline system via the Loos Premises and commence the production and marketing of gas from the Hill #1.

28. DEEI and/or its agent's inability to connect the Hill #1 to the pipeline system has shut down the entire Project. If DEEI and/or its agent were to connect the Hill #1 to the pipeline system after production has commenced from the gas wells on the other leases connected to the pipeline system, the pipeline system would have to be shut down and the wells shut in order to make said connection, causing the loss of revenues and increased time, labor, materials and contractor charges. Accordingly, to avoid said costs and charges, Plaintiffs have not commenced gas production from the gas wells on the other leases at this time.

29. The infrastructure for the Project, including all downhole casing, wellhead/production equipment, and surface facilities and pipelines, is valued in excess of $350,000.00.

30. Defendants' intentional and wrongful interference has damaged Plaintiff by interrupting the flow of marketable natural gas valued in excess of $75,000.00 to date.

## COUNT I
### [Declaratory Judgment]

31. Plaintiff hereby restates and incorporates by reference herein Paragraphs 1 through 30 of the Allegations Common to All Counts as and for Paragraph 31 of Count I.

32. Count I is an action for declaratory judgment pursuant to 28 U.S.C. §2201 for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears.

33. There exists an actual and justiciable controversy as to the following:

(a) whether the Loos Lease remains in force and effect;

(b) whether the Loos Lease grants Plaintiff the right to lay pipelines under and across the Loos premises to produce, transport and market gas from the Hill Lease;

(c) whether the Defendants have breached or violated Plaintiff's rights under the Loos Lease by preventing the production of gas from the Loos #1 well;

(d) whether the Defendants have breached or violated Plaintiff's rights under the Loos Lease by denying Plaintiff ingress to and egress across the Loos Premises needed to lay an interconnecting pipeline to the Hill #1 well;

(e) whether the Defendants have interfered with or violated Plaintiff's rights under the Myers Lease by preventing the production of gas from the Loos #1 well; and

WHEREFORE, Plaintiff pray the Court to make and enter a declaratory judgment that:

(a) the Loos Lease remains in force and effect;

(b) the Loos Lease grants Plaintiff the right to lay pipelines under and across the Loos premises to produce, transport and market gas from the Hill Lease;

(c) the Defendants breached and/or violated Plaintiff's rights under the Loos Lease by preventing the production of gas from the Loos #1 well;

(d) the Defendants breached and/or violated Plaintiff's rights under the Loos Lease by denying Plaintiff ingress to and egress across the Loos Premises needed to lay an interconnecting pipeline to the Hill #1 well;

(e) the Defendants interfered with or violated Plaintiff's rights under the Myers Lease by preventing the production of gas from the Loos #1 well; and

## COUNT II
### [Temporary, Preliminary and Permanent Injunction]

34. Plaintiff hereby restate and incorporate by reference herein Paragraphs 1 through 30 of the Allegations Common to All Counts and Paragraphs 31 through 33 of Count I as and for Paragraph 34 of this Count II.

35. The denial by Defendants of ingress to and egress across the Loos #1 to produce and market gas from the Loos #1 and to lay a pipeline under and across the Loos Premises to connect the Hill #1 to the pipeline system constituted an intentional interference with the Plaintiff's legitimate business expectancy to produce gas from the Loos Lease and adjoining lands and deliver that gas to Scope for ultimate sale in interstate commerce.

36. Plaintiff has no adequate remedy at law to prevent Loos from continuing to deny or otherwise interfere with DEEI and/or its agent ingress to and egress across the Loos Premises to produce and transport gas from the Loos #1 and across the Loos Premises to produce and transport gas from the Hill #1 well and other leaseholds adjoining the Loos Premises.

37. Defendants' actions have caused and continue to cause Plaintiff to suffer immediate and irreparable injury, including the loss of and damage to Plaintiff's right to operate the Loos #1 and Hill #1 gas wells and produce gas for commercial sale.

38. Defendant will suffer no undue harm or prejudice in the event this Court grants the injunctive relief sought herein.

WHEREFORE, Plaintiff pray the Court to grant temporary, preliminary and permanent injunctive relief, requiring Defendants and their agent, servants, employees, and others acting on Defendants' behalf or at the direction of Defendants to:

(a) permit DEEI and/ or its agent ingress and egress across and under the Loos premises for the maintenance, repair and operation of the wells, pipelines and associated facilities on the Loos Premises;

(b)   cease and desist from obstructing or otherwise interfering with Plaintiff's exercise of lawful property and contractual rights, including, but not limited to, Plaintiff's rights under the Loos Lease to inspect, operate and maintain Plaintiff's wells and pipelines and the right to install, maintain, repair and operate a pipeline under the Loos Premises to adjacent property to connect other wells, including the Hill #1, to the pipeline system; and

(c)   cease and desist from obstructing or otherwise interfering with Plaintiff's exercise of lawful property and contractual rights, including, but not limited to, Plaintiff's rights under the Myers Lease to inspect, operate and maintain Plaintiff's wells.

### COUNT III
*[Damages - Intentional Interference With Business Expectancy]*
*[Plaintiff demands trial by jury on Count III]*

39.   Plaintiff hereby restates and incorporates by reference herein Paragraphs 1 through 30 of the Allegations Common to All Counts, Paragraphs 31 through 33 of Count I and Paragraphs 34 through 38 of Count II as and for Paragraph 39 of this Count III.

40.   By virtue of the agreement with Scope, Plaintiff had a reasonable expectation of entering into and performing a valid business relationship for the production, delivery and sale of natural gas produced by the Loos #1 and Hill #1 gas wells.

41.   Defendants had actual knowledge of Plaintiff's business expectancy.

42.   Defendants' intentional and wrongful interference has prevented Plaintiff's legitimate business expectation from developing into a valid business relationship with Scope to sell produced gas from the Loos #1 and Hill #1 gas wells.

43.   Defendants' intentional and wrongful interference has prevented Plaintiff's legitimate business expectation from developing into a valid business relationship with Scope to sell produced gas from the Project.

44.   Defendants' intentional and wrongful interference has damaged Plaintiff by interrupting the flow of marketable natural gas valued in excess of $75,000.00 to date.

45.  Defendants acted with willful and intentional malice toward Plaintiff's property rights and legitimate business expectancies, thus warranting the trier of fact to assess exemplary and punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for their compensatory damages in an amount in excess of $75,000.00, together with additional compensatory damages accruing hereafter, exemplary and punitive damages in an amount to be determined by the trier of fact, and their costs and expenses incurred herein.

Double Eagle Energy, Inc., Plaintiff,

By: _____
One of Its Attorneys

BROWN, HAY & STEPHENS, LLP
Scott C. Helmholz, Esq.
Eliott M. Hedin, Esq.
205 S. Fifth Street, Suite 700
Springfield, IL 62705-2459
(217) 544-8491 telephone
(217) 241-3111 facsimile
shelmholz@bhslaw.com
ehedin@bhslaw.com

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained here in neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DOUBLE EAGLE ENERGY, INC.,

**DEFENDANTS**
LOOS, DALE R. and LOOS, LYNN S.

(b) County of Residence of First Listed Plaintiff: **Dallas County, Texas**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Pike County, Illinois**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Brown, Hay & Stephens, P.O. Box 2459, Springfield, IL 62701 544-8491

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☒ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1391(a)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:)
JUDGE _____
DOCKET NUMBER _____

DATE: 11/20/2006
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

E-FILED
Tuesday, 21 November, 2006 03:51:48 PM
Clerk, U.S. District Court, ILCD

No. 2003:4966 Book 620 Page 1466
Adams County, State of Illinois
RECORDED
Sep 16, 2003 10:38 AM  Fees $25.00

Larry D. Ehmen, County Recorder

## OIL AND GAS LEASE

AGREEMENT, Made and entered into the 15th day of September, 2003, by and between Dale R. Loos and Lynn S. Loos, husband and wife, 231 2900 St., Baylis, IL 62314, hereinafter called lessor (Whether one or more), and Double Eagle Energy, Inc., 3308 Preston Rd. Ste. 272, Plano, Texas 75093, hereinafter called lessee:

WITNESSETH: That the said lessor, for and in consideration of ONE THOUSAND TWO HUNDRED DOLLARS cash in hand paid, the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on part of lessee to be paid, kept and performed, has granted, demised, leased, and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and laying of pipelines, and of building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the County of Adams, State of Illinois, described as follows, to wit:

Envelope

E/2 SE 22 3S 5W containing 80 Acres
NE NE SEC 27 3S 5W containing 40 acres

IT IS AGREED, that this lease shall remain in force for a term of one year from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by lessee. Once pipelines are in place, Rights-of-Way for said pipeline shall remain in place permanently. In consideration of the premises the said lessee covenants and agrees:

1st. To deliver to the credit of lessor, free of cost into tank reservoirs or into the pipeline to which lessee may connect wells on said land, the equal one-sixteenth (1/16) part of all oil produced and saved from the leased premises.

2nd. To pay lessor one-sixteenth (1/16) of the gross proceeds each year, payable monthly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline, a royalty of one-sixteenth (1/16) payable monthly at the prevailing market rate for gas; and lessor to have gas free of cost from any such well for all stoves and furnaces and all inside lights in the principal dwelling on said land during the same time by making lessor's own connections with the well at lessor's own risk and expense. Lessor will be allowed to use 200 mcf of gas per year per well. Any gas used by lessor in excess of this amount, will be purchased by lessor at wellhead cost, payable monthly.

3rd. To pay lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of one-sixteenth (1/16) of the proceeds, payable monthly at the prevailing market rate at the mouth of the well.

If no well be commenced on said land on or before the 15th day of September 2004, this lease shall terminate as to both parties. If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil and gas, or either of them be found in paying quantities, this lease shall continue and be in force with like effect if such well had been completed within the term first mentioned.

If said lessor owns a less interest in the above described land than the entire undivided fee simple estate therein, then the royalties herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, oil and water and gas produced on said land for lessee's operations thereon except water from the wells of lessor.

Lessee shall reclaim the drill location to the original contours of the land before drilling operations commenced.

Lessee shall bury lessee's pipeline below plow depth, defined as being thirty-six (36) inches or deeper, unless exception is granted by lessor.

EXHIBIT
1

No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of lessor.

Lessee will not drill a well closer than 500' to a windmill.

Lessee shall pay for damages caused by lessee's operations to growing crops on said lands.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

Lessee shall reclaim location within one year of completion of drilling and completion operations.

Lessee shall reclaim location within one year of completion of plugging operations.

Lessee is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in the lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said premises in compliance with the spacing rules of any lawful authority, or when to do so would in the judgment of lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein bears to the total acreage so pooled in the particular unit involved.

The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, executors, administrators, successors, and assigns, but no change or division in ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require the installation of separate measuring tanks or instruments. No such change or division in the ownership of the land or royalties shall be binding upon lessee for any purpose until such person acquiring any interest has furnished lessee with the instrument or instruments, or certified copies thereof, constituting his chain of title from the original lessor. An assignment of this lease, in whole or in part, shall, to the extent of such assignment, relieve and discharge lessee of any obligations hereunder, and, if assignee of part or parts hereof shall fail to comply with any provision of the lease, such default shall not affect this lease in so far as it covers the part of said lands retained by lessee or another assignee and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder hereof, and the undersigned lessors, for themselves, their heirs, successors, and assigns, hereby surrender and release all rights of dower and homestead in the premises herein described insofar as said right of dower and homestead may in any way affect the purpose for which this lease is made as recited herein.

All express or implied covenants of this lease shall be subject to all Federal and State Laws and to all executive orders, rules or regulations of State and Fed
eral authorities, and this lease shall not be terminated, in whole or in part, nor lessee held liable for any failure to perform thereunder if such failure is due to or is the result of any such law, order, rule or regulation.

IN WITNESS WHEREOF WE SIGN, the date first above written

_Walb R Loos SR_ (SEAL)    (SEAL) _Lynn S Loos_

No. 200314958 Book 620 Page 14958

## ACKNOWLEDGEMENT

STATE OF __Illinois__ )
)
__Adams__ COUNTY )

I, __Daphne L. Simon__, A Notary Public, in and for said County, in the State aforesaid, do hereby certify that __Dale R. Loos, Sr.__
__and Lynn S. Loos__
personally known to me to be the same person(s) whose name(s) ___ subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that __they__ signed, sealed and delivered the said instrument as __their__ free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and SEAL, this __15th__ day of __September__, 20__03__

My commission Expires: __10-3-06__    __Daphne L Simon__
                                        Notary Public

OFFICIAL SEAL
DAPHNE L SIMON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 10-03-06


## ACKNOWLEDGEMENT

STATE OF _____ )
)
_____ COUNTY )

I, _____, A Notary Public, in and for said County, in the State aforesaid, do hereby certify that _____

_____
personally known to me to be the same person( ) whose name( ) ___ subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that _____ signed, sealed and delivered the said instrument as _____ free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and SEAL, this _____ day of _____, 20__

My commission Expires: _____    _____
                                                Notary Public

AFTER RECORDING RETURN TO:
ROBERT S. GILMORE
325 W. PHILLIPS CT.
GRAND PRAIRIE, TX 75051

OIL AND GAS
LEASE

AGREEMENT, Made and entered into the 13 day of Sept, 20 06 by and between Raymond William Myers and Shirley Lou Myers, husband and wife, 3055 S. Nellis Blvd., Apt 1025, Los Vegas, NV 89121, hereinafter called lessor (Whether one or more), and Double Eagle Energy, Inc., 325 W. Phillips Ct, Grand Prairie, TX 75051, hereinafter called lessee:

WITNESSETH: That the said lessor, for and in consideration of Ten Dollars ($10.00) cash in hand paid, the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on part of lessee to be paid, kept and performed, has granted, demised, leased, and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and laying of pipelines, and of building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the County of Adams, State of Illinois, described as follows, to wit:

E/2 SE/4 22 3S 5W containing 80 Acres
NE NE SEC 27 3S 5W containing 40 Acres
W/2 SW/4 23 3S 5W containing 80 Acres

IT IS AGREED, that this lease shall remain in force for a term of one year from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by lessee. Once pipelines are in place, Rights-of-Way for said pipeline shall remain in place permanently. In consideration of the premises the said lessee covenants and agrees:

1st To deliver to the credit of lessor, free of cost into tank reservoirs or into the pipeline to which lessee may connect wells on said land, the equal one-sixteenth (1/16) part of all oil produced and saved from the leased premises.

2nd To pay lessor one-sixteenth (1/16) of the gross proceeds each year, payable monthly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline, a royalty of one-sixteenth (1/16) payable monthly at the prevailing market rate for gas; and lessor to have gas free of cost from any such well for all stoves and furnaces and all inside lights in the principal dwelling on said land during the same time by making lessor's own connections with the well at lessor's own risk and expense. Lessor will be allowed to use 200 mcf of gas per year per well. Any gas used by lessor in excess of this amount, will be purchased by lessor at wellhead cost, payable monthly.

3rd To pay lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of one-sixteenth (1/16) of the proceeds, payable monthly at the prevailing market rate at the mouth of the well.

If no well be commenced on said land on or before the 15th day of September 2007, this lease shall terminate as to both parties. If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil and gas, or either of them be found in paying quantities, this lease shall continue and be in force with like effect if such well had been completed within the term first first mentioned.

EXHIBIT
2

Page 2

Lessor understands and agrees that all equipment at the well site is the property of the Lessee and Lessor's activity at the well site shall be limited to reading of meters only. Lessor shall comply with a "hands off" agreement and shall not alter settings or adjustments of valves or other items of equipment which may cause disruptive pressure imbalance conditions within the gas gathering system.

Lessee shall have the right to use, free of cost, oil and water and gas produced on said land for lessee's operations thereon except water from the wells of lessor.

Lessee shall bury lessee's pipeline below plow depth, defined as being thirty-six (36) inches or deeper, unless exception is granted by lessor.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises without written consent of lessor.

Lessee will not drill a well closer than 500' to a windmill.

Lessee shall pay for damages caused by lessee's operations to growing crops on said lands.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

Lessee shall reclaim location within one year of completion of drilling and completion operations.

Lessee shall reclaim location within one year of completion of plugging operations.

Lessee is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in the lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said premises in compliance with the spacing rules of any lawful authority, or when to do so would in the judgment of lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein bears to the total acreage so pooled in the particular unit involved.

The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, executors, administrators, successors, and assigns, but no change or division in ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee or require the installation of separate measuring tanks or instruments. No such change or division in the ownership of the land or royalties shall be binding upon lessee for any purpose until such person acquiring any interest has furnished lessee with the instrument or instruments, or certified copies thereof, constituting his chain of title from the original lessor. An assignment of this lease, in whole or in part, shall, to the extent of such assignment, relieve and discharge lessee of any obligations hereunder, and, if assignee of part or parts hereof shall fail to comply with any provision of the lease, such default shall not affect this lease in so far as it covers the part of said lands retained by lessee or another assignee and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder hereof, and the undersigned lessors, for themselves, their heirs, successors, and assigns, hereby surrender and release all rights of dower and homestead in the premises herein described insofar as said right of dower and homestead may in any way affect the purpose for which this lease is made as recited herein.

Book: 706 Page: 10030

Page 3

All express or implied covenants of this lease shall be subject to all Federal and State Laws and to all executive orders, rules or regulations of State and Federal authorities, and this lease shall not be terminated, in whole or in part, nor lessee held liable for any failure to perform thereunder if such failure is due to or is the result of any such law, order, rule or regulation.

IN WITNESS WHEREOF WE SIGN, the date first above written

_____ (SEAL)      (SEAL) _____
Raymond William Myers                                Shirley Lou Myers

ACKNOWLEDGEMENT

STATE OF _NEVADA_     )
                      )
_CLARK_ COUNTY        )

I, _Cammae Klaumenzer_, A Notary Public, in and for said County, in the State aforesaid, do hereby certify that _THEY_ _Raymond William Myers and Shirley Lou Myers_ personally known to me to be the same person(s) whose name(_) ___ subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that ___ signed, sealed and delivered the said instrument as ___ free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and SEAL, this _13_ day of _September_ 2006.

My commission Expires: _7-7-08_       _____
                                       Notary Public

CAMMAE KLAUMENZER
NOTARY PUBLIC
STATE OF NEVADA
APPT. NO. 93-0542-1
MY APPT. EXPIRES JULY 7, 2008